## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JAC PRODUCTS, INC.,

     Plaintiff,

v.

PANGEO CORPORATION,

     Defendant.

Case No. 2:25-cv-11070-BRM-DRG

Hon. Brandy R. McMillon

---

## JAC PRODUCTS, INC.'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff JAC Products, Inc. ("JAC") moves this Court for a temporary restraining order and preliminary injunction, with notice to Defendant Pangeo Corporation ("Pangeo"). JAC seeks an order (1) compelling Pangeo to continue supplying parts (the "Parts") as required under its contracts with JAC; and (2) to show cause why a preliminary injunction should not issue.

Pangeo has ignored the requirements of its Supply Contract with JAC and, on April 9, 2025, informed JAC that it would stop shipping Parts to JAC unless JAC agreed to pay the costs for all tariffs and import fees, in direct contradiction of the express terms of the parties' contracts. As of this filing, Pangeo has stopped shipping Parts to JAC. Without the Parts from Pangeo, JAC will be forced to shut down its production lines by **April 15, 2025**.

WHEREFORE, JAC requests that this Court issue a temporary restraining order and order to show cause in the form attached as **Exhibit 14** to this motion. JAC further requests the issuance of a preliminary injunction consistent with the temporary restraining order after the show cause hearing. JAC relies on the accompanying brief for the relief sought in this motion.

Respectfully submitted,

BODMAN PLC

By:/s/Joseph Shannon
 Joseph Shannon (P38041)
 Celina A. Grimes (P87349)
 6th Floor at Ford Field
 1901 St. Antoine Street
 Detroit, Michigan 48226
 (313) 259-7777
 Attorneys for Plaintiff JAC Products, Inc.

April 14, 2025

4910-8741-5862_2

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JAC PRODUCTS, INC.,                              Case No. 2:25-cv-11070-BRM-DRG

      Plaintiff,                                   Hon. Brandy R. McMillon

v.

PANGEO CORPORATION,

      Defendant.

---

**BRIEF IN SUPPORT OF JAC PRODUCTS, INC'S EMERGENCYMOTION
FOR TEMPORARY RESTRAINING ORDER
<u>AND PRELIMINARY INJUNCTION</u>**

4910-8741-5862_2

## **TABLE OF CONTENTS**

CONTROLLING OR MOST APPROPRIATE AUTHORITY .............................. ii

STATEMENT OF THE ISSUE PRESENTED ........................................................3

INTRODUCTION .........................................................................................................4

FACTUAL BACKGROUND ........................................................................................6
    I.  The Parties. ........................................................................................................6
    II.  The Purchase Contract. ....................................................................................6
    III.The Present Dispute. ..........................................................................................9
       A. Pangeo Refuses to Ship the Parts. ...............................................................9
       B. Pangeo Refuses to Meet. .............................................................................11
       C. Pangeo's Novel Defense. .............................................................................12
    IV.    JAC Will Suffer Irreparable Harm. ........................................................12

ARGUMENT .................................................................................................................14
    I.  Standard for Injunctive Relief. ......................................................................14
    II.  JAC Is Entitled To A TRO And Preliminary Injunctive Relief. ..................15
       A. JAC Likely Will Succeed On The Merits Of Its Claims.............................15
          1.  Pangeo has Repudiated and Breach the Supply Contract. .................15
          2.  JAC is entitled to specific performance. ............................................16
       B. JAC Will Be Irreparably Harmed If Injunctive Relief Is Not
          Granted Because JAC Has No Alternative Source Of Supply And
          No Adequate Remedy At Law. ...............................................................19
       C. An Injunctive Order Will Not Harm Pangeo. .........................................23
       D. Public Interest Supports Granting JAC Injunctive Relief. ......................24

CONCLUSION AND RELIEF REQUESTED .....................................................24

i

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

### Cases

*AK Steel Corp. v. Colton*, No. 01-74279, 2001 U.S. Dist. LEXIS 20314 (E.D. Mich. Dec 3, 2001) ................................................................22

*Cafe Cola, Inc. v. Somojo, Inc*., Civ.A. No. 96-562, 1996 U.S. Dist. LEXIS 3207 *25-26 (E.D. La. 1996)................................................17

*Chem-Trend, Inc. v. McCarthy*, 780 F. Supp. 458, 461 (E.D. Mich. 1991)............22

*Cooper-Standard Auto., Inc. v. Daikin Am., Inc.*, 586 F. Supp. 2d 846 (E.D. Mich. 2021) ............................................................. 16, 22, 24

*Cutler-Hammer, Inc. v. Universal Relay Corp.*, 285 F. Supp. 636, 639 (S.D.N.Y. 1968) ................................................................22

*Eberspaecher N. Am., Inc. v. Van Rob, Inc.*, 544 F. Supp. 2d 592, 603 (E.D. Mich. 2008) ................................................................22

*Fast v. Southern Offshore Yachts*, 587 F. Supp. 1354, 1357 (D. Conn. 1984) .......17

*In re Eagle-Picher Industries, Inc.,* 963 F.2d 855, 859 (6th Cir. 1992) ...................14

*Jaup v. Olmstead*, 334 Mich. 614; 55 NW2d 119 (1952)........................................18

*Jay County Rural Electric Membership Corp. v. Wabash Valley Power Ass'n*, 692 N.E.2d 905, 911 (Ct. App. Ind. 1998) ..................................17

*Jimdi, Inc. v. Twin Bay Docks & Prod., Inc.*, 501 F. Supp. 2d. 993, 1001 (E.D. Mich. 2007) ................................................................14

*Kelsey-Hayes Co. v. Galtaco Redlaw Castings Corp.*, 749 F. Supp. 794 (E.D. Mich. 1999) ................................................................21

*Key Safety Sys. v. Invista, S.A.R.L., L.L.C.*, No. 08-CV-10558, 2008 U.S. Dist. LEXIS 70117, *37 (E.D. Mich. Sep. 16, 2008) ................................23

*Lear Corp. v. Dura Auto. Sys.*, 2006 No. 06-075939-CZ, 2006 Mich. Cir. LEXIS 1607 at *8 (Cir. Ct. Oakland Cty. Aug 11, 2006) ........................................ 16, 19

*Michigan State Employees Ass'n v. Dep't of Mental Health*, 421 Mich 152, 157-158; 365 NW2d 93 (1984)................................................14

*Neveux v. Webcraft Techs.*, 921 F. Supp. 1568. 1573 (E.D. Mich. 1996)...............24

*Nexteer Automotive Corp. v. Primax Corp.*, No. 2:2025-cv-11035 (E.D. Mich. April 10, 2025) ................................................................18

*TeamQuest Corp. v. Unisys Corp.*, No. C97-3049, 2000 WL 34031793, *13 (N.D. Iowa, April 20, 2000) ................................................................21

*Uniroyal Goodrich Tire Co. v. Hudson*, 873 F. Supp. 1037, 1049 (E.D. Mich. 1994)................................................................24

### Other Authorities

Trentacosta, Michigan Contract Law, § 14.16.......................................................19

4910-8741-5862_2

## STATEMENT OF THE ISSUE PRESENTED

Under Fed. R. Civ. P. 65, should this Court grant JAC Products, Inc. a temporary restraining order and preliminary injunction ordering Pangeo Corporation to continue to produce the Parts and supply them to JAC Products, Inc. as required by the parties' Supply Contract?

Jac Products, Inc. answers: "Yes."

**INTRODUCTION**

JAC Products, Inc. ("JAC") is a tier one automotive supplier that designs, manufacturers, and distributes vehicle trim parts for sale to original equipment manufacturers ("OEMs") and after-market distributors. Defendant Pangeo Corporation ("Pangeo") provides certain custom parts (the "Parts") to JAC under an express unambiguous fixed-price requirements contracts.

Pangeo Corporation is a Canadian corporation in turned owned by a Chinese parent. As such, its products are subject to tariffs including those recently imposed by President Donald Trump. Because of the tariffs issued against Chinese products, and despite similar tariffs having been imposed by the Chinese government against U.S. products, Pangeo has refused to honor its contractual obligations even though the parties' contract expressly contemplated potential new tariffs and provided that they would be split 50/50 between the parties. Despite the parties' contract, Pangeo has demanded that JAC pay all tariffs and, failing JAC's agreement to do so, has stopped shipment of the Parts.  In addition to demanding higher prices, by imposing 100% of the Chinese tariffs on JAC, Pangeo has demanded that JAC waive its legal rights to damages. In fact, Pangeo has even refused to meet with JAC until JAC waives its legal rights.

Without the Parts from Pangeo, JAC will be forced to shut down production lines by **April 15, 2025**. JAC cannot simply turn to another supplier for parts.

Pangeo owns and operates the equipment that produces the Parts, and the Parts have been approved under the rigorous PPAP testing model.  Thus, Pangeo's violation of its contractual obligations will prevent JAC from supplying the Parts to its OEM customer, General Motors ("GM").  GM depends on a steady flow of parts from JAC, and idling JAC and GM plants will have catastrophic consequences for JAC, GM, other suppliers of these plants, their employees, and the associated local economies.  Moreover, JAC will have no recovery for its financial losses as Pangeo has demanded that JAC waive its legal rights, by conditioning shipment on new purchase orders.

JAC seeks a temporary restraining order and a preliminary injunction. Injunctive relief is warranted in this case.  As explained below JAC has a high likelihood of success on the merits of its claims. Applying Michigan law, this Court has consistently recognized that unilateral stop ship actions in the Automotive industry that is dependent on just in time delivery causes irreparable harm. In addition, Pangeo has conditioned its future shipments on JAC waiving its contractual rights. This Court has also acknowledge that doing so also constitutes irreparable harm.  The harm Pangeo's stop ship has, and will continue to cause, eclipses the harm Pangeo would suffer under an injunction. Pangeo cannot complain about an injunction requiring it to fulfill its contractual obligations. Likewise, it is in the

4910-8741-5862_2

public interest to enforce commercial contracts, especially where the failure to do so would adversely affect a significant segment of the public.

For all these reasons, this Court should enter a temporary restraining order requiring Pangeo: (1) to continue performing under its contracts with JAC on the agreed price and payment terms; and (2) to show cause why a preliminary injunction should not issue.

## FACTUAL BACKGROUND[1]

### I.   The Parties.

JAC is a tier 1 automotive supplier in the business of designing, manufacturing and distributing vehicle trim parts and components including, without limitation, vehicle roof and deck racks, for sale to OEMs and after-market distributors. Compl. ¶10. Pangeo is a Chinese corporation that provides certain custom parts under fixed-price requirements contracts. *Id.* at ¶11.

### II.   The Purchase Contract.

JAC and Pangeo have supply contracts in which Pangeo agreed to provide 100% of JAC's requirements of certain automotive trim parts. *Id.* ¶12. The JAC/Pangeo supply contract was initially formed by Purchase Orders as updated from time to time (the "Purchase Orders"), attached as **Exhibit 1** and the JAC Terms

---

[1] This statement of facts is supported by JAC's verified complaint and the documents attached hereto.

4910-8741-5862_2

and Conditions (the "JAC Terms and Conditions"), attached as **Exhibit 2**. The Terms and Conditions are incorporated into the Purchase Orders by reference.

In 2020, JAC and Pangeo negotiated a detailed, 8-page modification of their supply relationship by executing a document titled "Term Sheet", which was signed by Pangeo on November 3, 2020 (the "Term Sheet"), attached as **Exhibit 3**.

As of November 2020, the parties' relationship has been governed by the Purchase Orders, the JAC Terms and Conditions, and the Term Sheet (the "Supply Contract"). The Supply Contract provides for the supply of nine (9) parts, listed by part on Exhibit 3 (the "Parts"). *Id.* The Supply Contract obligates Pangeo to provide 100% of the Parts required by JAC through the life of the OEM programs for which the Parts are supplied and for fixed prices:

> 1. <u>Acknowledgement</u>. Subject only to modifications set forth herein, JAC's Purchase Orders will continue in full force and effect. Pangeo will be obligated to manufacture JAC's requirements of all parts for the programs that have been awarded to Pangeo, in each case as identified on Schedule 1, including as currently designed and with any minor model, engineering or other changes that occur within the expected program life as set forth in JAC's applicable award letter or otherwise expected at the time of sourcing, (collectively, "Goods"). Each party commits to satisfying its commitments and obligations as set forth in the award letters, purchase orders and/or releases, each with JAC's Purchase Order Terms and Conditions, subject to the modifications set forth herein (collectively, "Purchase Orders").
>
> 2. <u>100% Requirements Commitment</u>. JAC agrees to purchase 100% of its requirements from Pangeo of Goods for the programs that have been awarded to Pangeo, including as currently designed and with any minor model, engineering or other changes that occur within the

4910-8741-5862_2

expected program life as set forth in JAC's applicable award letter or otherwise expected at the time of sourcing. Pangeo will be the exclusive supplier to JAC of the Goods and JAC will not dual source the Goods.

3. <u>Price Schedule.</u>

a. The prices on Schedule 1 will remain effective through the life of each applicable program and will be subject to change only for engineering changes that result in additional costs to Pangeo, the 50-50 sharing of improvements and efficiencies as described in (b) below and localization changes as described in (c) and (d) below.

Ex. 3, ¶¶1,2, 3. *See also* Ex.1; Ex. 2, ¶4; Compl. ¶¶16, 17.

The Supply Contract further provides that, "if at any time during the period that this Term Sheet remains in effect, Pangeo should experience a significant increase in the cost of tariffs. . . . <u>Pangeo shall share such cost increase 50-50</u>. . . ." with JAC. Ex. 3, ¶3(d). (emphasis added)

The Supply Contract provides that "[t]ime and quantity are of the essence in the performance of this Purchase Order." Ex. 2, ¶7. "Deliveries shall be made strictly in accordance with both the quantities and times specified in [each] Purchase Order." *Id*. In the Supply Contract, Pangeo acknowledged and agreed that money damages would not be sufficient for any actual, anticipatory or threatened breach of the Purchase Order and that JAC is entitled to specific performance and temporary, preliminary and permanent injunctive or other equitable relief as a remedy for any such breach, without proof of actual damages and without bond or other security being required. *Id*. at ¶30.

4910-8741-5862_2

Pangeo further agreed that the Purchase Order would be interpreted in accordance with Michigan law and consented to the exclusive jurisdiction of the appropriate federal court in the U.S. District Court for the Eastern District of Michigan, Southern Division, or of the state courts in the State of Michigan for any legal or equitable actions arising out of the Purchase Order. *Id*. at ¶43. Pangeo agreed to waive "any and all objections to venue in such courts." *Id*.

## III.   The Present Dispute.

Following President Donald Trump's imposition of tariffs on Chinese imports, Pangeo has refused to honor its agreement to split the tariffs 50-50, despite the express language of the Term Sheet. Without the Parts from Pangeo, JAC will be forced to shut down production lines at multiple locations. *Id.* The shutdowns will occur imminently, as JAC only has enough Parts to last to **Tuesday, April 15, 2025**.

### A. Pangeo Refuses to Ship the Parts.

On March 13, 2025, Pangeo sent a letter to JAC following the 20% increase of tariffs on Chinese imports. **Exhibit 4**; **Exhibit 5**. Pangeo demanded that JAC take 100% responsibility for the payment of tariffs, including retroactive payment for shipments Pangeo made from February 4, 2025, and by issuing an updated Purchase Order. The demanded Purchase Order seeks to shift all responsibilities associated with tariffs to JAC and requires JAC to pay the tariffs directly. Ex. 4. The demanded

Purchase Order also lowers the base-piece price as Pangeo's selling price and imposes all logistics costs on JAC while relieving Pangeo of all tariff responsibility.

On April 2, 2025, JAC responded, stating it would agree to split the tariffs as discussed by the parties. Ex. 5. On April 3, 2025, Pangeo stated it was not satisfied with the 50-50 split. *Id*. On the same day, JAC replied, stating it would issue the Purchase Orders to Pangeo retroactive to February 1, 2025 to place Pangeo in a position where it could recover amounts related to the tariffs on the January 2025 price. *Id*.

On April 4, 2025, JAC stated that, on a go-forward basis, it would continue to follow the guidelines in the Supply Contract. *Id*. Pangeo would remain the importer of record and ship to JAC's U.S. facility, and JAC would investigate updated freight costs with its third-party logistics company to ensure lower cost freight. JAC further required agreement to a separate monthly invoice to compensate Pangeo for tariffs it would pay, based on quantities received at JAC's U.S. facility. *Id*.

Pangeo replied, demanding that JAC be fully responsible for tariffs directly, and releasing Pangeo from any obligation to split tariffs. *Id*. Pangeo conditioned its demand on new Purchase Orders being retroactively dated.  *Id*. Until JAC agreed to these terms, Pangeo refused to ship the Parts.

### B. Pangeo Refuses to Meet.

Pangeo issued another letter on April 9, 2025, demanding that JAC issue a new Purchase Order that would require JAC to bear all costs of the new tariffs. **Exhibit 6**. Pangeo further demanded JAC to pay for the outstanding $63,068.44 of tariffs that Pangeo had paid since February 4, 2025, subtracting the first two weeks which Pangeo agreed to take responsibility for, leaving the outstanding balance that Pangeo claimed JAC was responsible for as $55,932.00. *Id.* Pangeo conditioned the continued shipment of Parts on JAC's delivery of the new Purchase Order with the specified new terms and, if JAC refused, to inform Pangeo of its intent to transition the business. *Id.*

On April 10, 2025, JAC replied, disagreeing with Pangeo's position and requesting a meeting between the two parties, to which Pangeo initially agreed. JAC further emphasized that a drastic step like the one Pangeo was taking, in shutting down automotive supply, could not wait several days to discuss. **Exhibit 7**.

On April 11, 2025, Pangeo replied, stating, "The parts are available at our warehouse. Please update and then provide the P.O.s as shown on the attached. *Then we can have the call*." *Id*. When JAC replied, asking if the parts would be released, Pangeo responded that the parts would only be released upon JAC's issuance of the new Purchase Orders. JAC replied, requesting to know by noon on April 11, 2025, whether Pangeo would release the parts. *Id.*

Pangeo stated, "We will release them under the conditions that we specified on my last email." *Id*. Pangeo has continued to refuse to meet with JAC, leaving JAC no other option but to file this motion.

### C. Pangeo's Novel Defense.

In its April 9, 2025 letter, Pangeo asserted as a defense to JAC's assertion that Pangeo was breaching its contract with a truly novel rebuttal. Pangeo acknowledges that, "[t]he previous contract calls for a 50/50 share of the tariffs" but states that, "it is our position that our revised commercial offer constitutes a new agreement – one that lowers the piece price for JAC while shifting responsibility for transit and tariffs from Pangeo to JAC." Ex. 6. (emphasis added)

## IV.   JAC Will Suffer Irreparable Harm.

Because of Pangeo's refusal to ship the Parts, JAC will soon shut down its production, and GM will be forced to follow. As is common in the automotive industry, JAC maintains very little inventory of parts and components. Compl. ¶40. The "just-in-time" model reduces storage and inventory costs and allows for faster introduction of design changes. *Id.* at ¶41. A consequence of this just-in-time model is that tier 1 suppliers like JAC require an uninterrupted flow of Parts from their suppliers shortly before the Parts are required for JAC's production. *Id.* ¶42.

GM depends on a steady flow of parts from JAC, but Pangeo's violation of its contractual obligations will prevent JAC from supplying GM with the Parts. *Id.* ¶43.

Interruption of production at JAC and GM would also idle the other suppliers whose parts or components go into the affected vehicle lines. *Id*. ¶44. Pangeo owns and operates the equipment that produces the Parts and the Parts have been approved under the rigorous PPAP testing model. *Id.* It would take JAC at least 9-12 months to replace Pangeo as a supplier of the Parts. *Id.* That is why the JAC Terms and Conditions state that "[t]ime and quantity are of the essence in the performance of this Purchase Order." Ex. 2, ¶7.

Because the financial losses that would result from Pangeo's refusal to provide Parts would be incalculable, JAC has no adequate remedy at law. *Id.* ¶45. Pangeo consented to injunctive relief requiring Pangeo to comply with its contractual obligations. Pangeo agreed that such relief would be appropriate if it threatened to halt, or halted, delivery of the Parts. Temporary and preliminary injunctive relief is warranted here. JAC will certainly prevail on the merits of its claims, JAC will suffer irreparable injury if Pangeo does not perform as promised, the harm Pangeo's stop ship will cause eclipses the harm Pangeo would suffer under the injunction JAC seeks, and the public interest favors issuance of the injunction JAC seeks.

## ARGUMENT

### I.    Standard for Injunctive Relief.

The purpose "of a preliminary injunction is to preserve the status quo, so that upon the final hearing, the rights of the parties may be determined without injury to either." *Niedzialek v. Journeymen Barbers, etc., Int'l Union*, 331 Mich. 296; 49 N.W.2d 273 (1951).

MCR 3.310(A) governs the Court's issuance of a preliminary injunction. Injunctive relief is generally proper when a movant demonstrates: (i) the likelihood that the movant will prevail on the merits; (ii) whether the movant will suffer irreparable injury if a preliminary injunction is not granted; (iii) whether harm to the movant in the absence of an injunction outweighs harm to the opposing party if an injunction is granted; and (iv) the harm to the public interest, if any, if an injunction issues. *Michigan State Employees Ass'n v. Dep't of Mental Health*, 421 Mich 152, 157-158; 365 NW2d 93 (1984). "It is important to note that the four considerations applicable to preliminary injunctions are factors to be balanced and not prerequisites that must be satisfied."  *In re Eagle-Picher Industries, Inc.,* 963 F.2d 855, 859 (6th Cir. 1992). "These factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements." *Id*. The Court need not make specific findings as to all four factors if fewer factors are dispositive of the issue. *See, e.g., Jimdi, Inc. v. Twin Bay Docks & Prod., Inc.*, 501 F. Supp. 2d. 993, 1001 (E.D. Mich.

2007). For example, if a plaintiff fails to show a substantial likelihood of success on the merits, the Court still may grant injunctive relief if plaintiff shows "serious questions" regarding the merits and if the irreparable harm "decidedly outweighs" any potential harm in issuing an injunction. *Id.*

As it relates to a temporary restraining order, the Court may grant a temporary restraining order without written or oral notice to an adverse party if:

> (a) it clearly appears from specific facts shown by affidavit or by a verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant from the delay required to effect notice or from the risk that notice will itself precipitate adverse action before an order can be issued;
>
> (b) the applicant's attorney certifies to the court in writing the efforts, if any, that have been made to give the notice and the reasons supporting the claim that notice should not be required; and
>
> (c) a permanent record or memorandum is made of any nonwritten evidence, argument, or other representations made in support of the application. [MCR 3.310(B)(1).]

Here, the circumstances weigh heavily in favor of this Court granting injunctive relief.

## II.   JAC Is Entitled To A TRO And Preliminary Injunctive Relief.

### A. JAC Likely Will Succeed On The Merits Of Its Claims.

#### 1.   Pangeo has Repudiated and Breach the Supply Contract.

The Purchase Orders, JAC Terms and Conditions, and Term Sheet do not permit Pangeo to increase its prices, demand JAC's payment of tariffs, or change

payment and other terms or use the threat of non-delivery to extort a price increase or change in payment and other terms. The Supply Contract is a fixed price requirements contract. Ex. 3, ¶ 3. The purpose of a fixed price contract is to allocate the risks and rewards of cost fluctuations. The seller assumes the risk that the cost of producing the goods would rise and receives the benefit if those costs decrease. Further, the Term Sheet specifically provides that, "at any time during the period that this Term Sheet remains in effect, Pangeo should experience a significant increase in the cost of tariffs. . . .Pangeo shall share such cost increase 50-50. . . ." Ex. 3, at ¶3(d). (emphasis added) However, now that the costs of tariffs have increased, Pangeo seeks to avoid the risk it freely accepted by inflicting disastrous consequences on JAC and, thereafter, GM.

Clearly, Pangeo has repudiated and breached the Supply Contract by stopping its supply of the Parts and JAC will succeed on the merits of its claim.

## 2. JAC is entitled to specific performance.

This Court can require recalcitrant contracting parties like Pangeo to perform in accordance with their contract. *See, e.g.*, *Lear Corp. v. Dura Auto. Sys.*, 2006 No. 06-075939-CZ, 2006 Mich. Cir. LEXIS 1607 at *8 (Cir. Ct. Oakland Cty. Aug 11, 2006) (attached as **Exhibit 8**) (converting temporary restraining order that ordered Dura "to continue performing under its contracts with Lear" into preliminary injunction ordering same); *Cooper-Standard Auto., Inc. v. Daikin Am., Inc.*, 586 F.

Supp. 2d 846 (E.D. Mich. 2021) (Hon. Nancy G. Edmunds; granting Cooper-Standard's request for a TRO requiring Daikin to continue shipping parts pursuant to the parties' contract, after Daikin threatened to cease shipping parts until Cooper-Standard accepted Daikin's increased pricing proposal; subsequently converted to preliminary injunction by stipulation); *Fast v. Southern Offshore Yachts*, 587 F. Supp. 1354, 1357 (D. Conn. 1984) (ordering specific performance of a boat sales contract despite defendant's claim of insecurity); *Jay County Rural Electric Membership Corp. v. Wabash Valley Power Ass'n*, 692 N.E.2d 905, 911 (Ct. App. Ind. 1998) (upholding lower court's issuance of a preliminary injunction to perform under the terms of a contract where plaintiffs provided adequate assurance under UCC 2-609); *Cafe Cola, Inc. v. Somojo, Inc*., Civ.A. No. 96-562, 1996 U.S. Dist. LEXIS 3207 *25-26 (E.D. La. 1996) (**Exhibit 9**) (issuing a preliminary injunction requiring performance under the contract where request for adequate assurances was not reasonable).

Moreover, Pangeo agreed that JAC would be entitled to specific performance:

> Seller [Pangeo] acknowledges and agrees that money damages would not be a sufficient remedy for any actual, anticipatory or threatened breach of this Purchase Order by Seller with respect to its deliver of Products or Services to Buyer and, that, in additional to all other rights and remedies that Buyer may have, Buyer shall be entitled to specific performance and temporary, preliminary and permanent injunctive or other equitable relief as a remedy for any such breach, without proof of actual damages and without bond or other security being required.

Ex. 2, at ¶30.

Michigan courts have long been willing to order specific performance in cases where damages would not provide an adequate remedy for the harmed party, as in this case where JAC faces profound harm if it cannot supply GM with the required automotive parts. *See, e.g., Jaup v. Olmstead*, 334 Mich. 614; 55 NW2d 119 (1952) (specifically enforcing contract for sale of used gas heaters when utility company refused to provide gas service to new customers). As noted by commentators, "[s]pecific performance is particularly appropriate in the modern automotive industry where manufacturers commonly enter into requirements contracts." Trentacosta, Michigan Contract Law, § 14.16.

Indeed, notably another case with similar facts was recently filed in this Court. *See Nexteer Automotive Corp. v. Primax Corp.*, No. 2:2025-cv-11035 (E.D. Mich. April 10, 2025) (**Exhibit 10**). Like the present case, Primax stopped shipping tie rods it produces in South Korea to Nexteer, which will stop production of both Nexteer and GM by April 17, 2025. However, unlike in *Nexteer Automotive Corp.*, the Supply Contract in the present case specifically provides that the parties are to split the tariff costs 50-50. Therefore, the facts in this case weigh even more so in favor of this Court granting injunctive relief.

### B. JAC Will Be Irreparably Harmed If Injunctive Relief Is Not Granted Because JAC Has No Alternative Source Of Supply And No Adequate Remedy At Law.

JAC will be irreparably harmed if the Court does not issue an injunction compelling Pangeo to continue producing and delivering the Parts.

Unlike other supplier stop-ship cases, Pangeo has demanded that JAC waive its contractual rights in order to continue receiving supply. Michigan courts have previously ruled that such an ultimatum deprives a purchaser of any adequate remedy at law and constitute irreparable injury. In *Lear Corp. v. Dura Auto. Sys.*, No. 06-075939-CZ, 2006 Mich. Cir. LEXIS 1607 (Cir. Ct. Oakland Cty. Aug 11, 2006), Dura threatened to stop shipment after Lear issued a setoff notice, which Dura disputed. Dura argued that the harm was not truly irreparable because Lear could avoid the harm by simply acceding to Dura's demand that Lear rescind Lear's setoff notice. *Id.* at *3. The court (through Judge Mark Goldsmith) disagreed, explaining:

> [N]othing in those cases stands for the proposition that a court of equity is foreclosed from issuing preliminary relief where irreparable harm can be avoided by forcing the movant to surrender an undisputed contract right. Furthermore, the contract right that Dura demanded Lear surrender is itself not susceptible to compensation in monetary terms because it is an intangible right to security. If Dura had demanded, for example, to threaten a 'stop ship" unless Lear agreed to a higher price, Lear could pay the higher price and sue for overpayment. However, the surrender of a setoff right is not easily calculable. . . Where an injury is not easily measurable in monetary terms, the damage is, by definition, irreparable.

4910-8741-5862_2

*Id.* at *4.

Here, the harm is even greater than in *Lear Corp.*, because Pangeo is not merely demanding that JAC waive a single contract right. Instead, Pangeo is demanding that JAC waive *all of its rights under the parties' contract*, and instead agree to be bound by an entirely different set of terms, Pangeo's. Thus, unless the Court issues a TRO and a preliminary injunction enforcing the terms of the contracts, JAC will be irreparably harmed before the Court can address the merits of JAC's claims.

The gravity of the threat Pangeo made to compel JAC into surrendering its contract rights would likewise constitute irreparable injury. If Pangeo does not provide the Parts, production lines will shut down, resulting in irreparable and profound consequences to JAC, its employees, GM, their employees, and numerous other suppliers supporting production of OEM's programs. These damages include:

1) the potential loss of millions of dollars in revenue;

2) the potential shutdown of JAC and GM and those of other suppliers scattered across North America;

3) the layoff of employees at these facilities;

4) disruption of the supply chain;

5) damage to JAC's relationship with GM;

6) the loss of goodwill and customer trust; and

7) possible claims by third parties, including GM, for losses caused by JAC's inability to meet its supply obligations.

4910-8741-5862_2

This Court understands very well that disruption to the supply chain also constitutes irreparable harm. As noted above, Pangeo's conduct will cause consequences worse than a simple shutdown. In *Kelsey-Hayes Co. v. Galtaco Redlaw Castings Corp.*, 749 F. Supp. 794 (E.D. Mich. 1999), this Court recognized that irreparable harm can be caused in the automotive industry by the interruption of a supply in parts:

> It is well known that in an effort to promote efficiency, car manufacturers are reducing the size of its reserve banks. As a result, Parts are often incorporated into a finished product within a few hours of their delivery. *A supplier's failure to make scheduled shipments may have immediate and dramatic consequences . . . . Thus, a breach of contract in the automotive industry may be more coercive than in other industries.*

749 F. Supp. at 797 (Emphasis added).

Even if Pangeo relented on its demand that JAC waive its contract rights, the danger of irreparable injury is not alleviated by a breaching party's promise to perform if the other party accepts new contract terms offered by the breaching party. *TeamQuest Corp. v. Unisys Corp.*, No. C97-3049, 2000 WL 34031793, *13 (N.D. Iowa, April 20, 2000) (attached as **Exhibit 11**) (reasoning that the breaching party could not "defeat a showing of irreparable harm by making [the other party] a conditional, unilateral offer to settle the case," and denying an injunction would allow one party to "force the parties into a settlement agreement"). In fact, a Court

has recently ruled that a temporary restraining order is appropriate in circumstances where a supplier threatened to stop supply unless a buyer paid a price increase. *See Cooper-Standard Auto., Inc. v. Daikin Am., Inc.*, 586 F. Supp. 2d 846 (E.D. Mich. 2021) (Hon Nancy G. Edmunds; granting Cooper-Standard's request for a TRO in response to Daikin's threat to cease shipping Parts until Cooper-Standard accepted Daikin's increased pricing proposal; subsequently converted to preliminary injunction by stipulation).[2]

Injury to a company's goodwill constitutes irreparable injury. *See e.g.*, *Chem-Trend, Inc. v. McCarthy*, 780 F. Supp. 458, 461 (E.D. Mich. 1991) (granting preliminary injunction, as "injury to a company's good will constitutes irreparable injury"); *Cutler-Hammer, Inc. v. Universal Relay Corp.*, 285 F. Supp. 636, 639 (S.D.N.Y. 1968) ("Since injuries to reputation are not readily recompensed by money damages the harm caused may well be irreparable. A preliminary injunction is warranted under these circumstances."); *AK Steel Corp. v. Colton*, No. 01-74279, 2001 U.S. Dist. LEXIS 20314 (E.D. Mich. Dec 3, 2001) (attached as **Exhibit 12**) (competitive injury and loss of goodwill "are difficult to quantify, and justify this

---

[2]   Judge Edmunds specifically rejected Daikin's argument that Cooper-Standard did not face irreparable injury because it could avoid harm by paying the demanded price increase, relying on this Court's decision in *Eberspaecher N. Am., Inc. v. Van Rob, Inc.*, 544 F. Supp. 2d 592, 603 (E.D. Mich. 2008).

Court's issuance of a preliminary injunction"). If an injunction is not issued, JAC's relationship with GM may be irreparably harmed. JAC could suffer the loss of goodwill and customer trust if its ability to support GM's production is disrupted.

Thus, unless the Court issues a TRO and a preliminary injunction enforcing the terms of the contracts, JAC will be irreparably harmed before the Court can address the merits of JAC's claim.

### C. An Injunctive Order Will Not Harm Pangeo.

The balance of hardships weighs greatly in JAC's favor. As noted above, the harm to JAC if injunctive relief is not granted is great. Pangeo, on the other hand, will not be harmed if it is required to perform in accordance with the Supply Contract. Pangeo simply has no right to impose new prices on JAC. Pangeo will not be harmed if it is deprived of their ability to breach the Supply Contract and attempt to impose a new contract on JAC. If an injunction is granted, Pangeo will simply be required to perform in accordance with the contracts it freely accepted. This factor weighs in favor of granting JAC's motion.

Further, the potential harm to non-parties (such as the OEM and hundreds of employees and consumers) weighs in favor of injunctive relief. *See Key Safety Sys. v. Invista, S.A.R.L., L.L.C.*, No. 08-CV-10558, 2008 U.S. Dist. LEXIS 70117, *37 (E.D. Mich. Sep. 16, 2008) (potential shutdown of third party OEMs based on lack of parts weighed in favor of injunctive relief) (attached as **Exhibit 13**). This factor

4910-8741-5862_2

weighs in favor of granting Pangeo's motion. *See Cooper-Standard Auto., Inc.*, 568 F. Supp. at 853 ("The 'just-in-time' nature of the automotive supply chain provides potential for large-scale disruption if just one of the down-line companies is unable to fulfill its obligations under contract").

### D. Public Interest Supports Granting JAC Injunctive Relief.

Public policy strongly favors the issuance of injunctive relief in this case. Indeed, there will be very serious consequences to JAC, GM, and those employees and communities that depend upon them, if an injunction is not issued. An untold number of employees and their communities could suffer grave economic consequences if an injunction is not issued.

Moreover, the public has no interest in allowing a party to breach its contracts to extort new payment terms by threatening to violate its contracts and cease performance. Rather, "[t]he public has an interest in having valid contracts enforced . . . ." *Uniroyal Goodrich Tire Co. v. Hudson*, 873 F. Supp. 1037, 1049 (E.D. Mich. 1994); *Neveux v. Webcraft Techs.*, 921 F. Supp. 1568. 1573 (E.D. Mich. 1996)

(the public interest "lies in preserving the enforceability of contracts.").

## <u>CONCLUSION AND RELIEF REQUESTED</u>

Because all four factors weigh in favor of granting JAC's motion, this Court should issue a temporary restraining order and a preliminary injunction enjoining Pangeo from committing further breaches of the parties' Supply Contract and

4910-8741-5862_2

compelling them to continue supplying JAC with the Parts in accordance with the terms of the parties' Supply Contract.

Respectfully submitted,

BODMAN PLC

By:/s/ Joseph Shannon
    Joseph Shannon (P38041)
    Celina A. Grimes (P87349)
    6th Floor at Ford Field
    1901 St. Antoine Street
    Detroit, Michigan 48226
    (313) 259-7777
April 14, 2025    Attorneys for JAC Products, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 14, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system.

/s/Joseph J. Shannon
Joseph J. Shannon (P38041)

4910-8741-5862_2